Lessee of PATRICK CAMPBELL, DAVID CAMPBELL, HENRY WALES and MARY his wife, and JANE CAMPBELL against ANDREW RHEIM and CASPER LEAR.

Where lands held under an equitable title, have been formerly (as in 1758,) sold bona fide by administrators to pay debts or maintain children, without an order of Orphans' Court, such sales will be established.

EJECTMENT for lands in Derry township.

It appeared in evidence, that David Campbell on the 28th May 1748, took out a warrant for 200 acres of land, more or less, in Derry township, adjoining James Russel, including his improvement. Interest to commence thereon from 1st March 1739. On that day he also paid 10l. into the receiver general's office. He had brought the original improvement from William Hall, and had on the tract a tolerable cabin, stables, and above ten acres of cleared land. He died intestate on the lands in 1758, leaving Susannah his widow, and issue, the lessors of the plaintiff, who were all young at the time, but their ages were not ascertained. The intestate was possessed of a stock of creatures, which was sold shortly after his death. He had a brother named Patrick, who lived about six miles from the land, and two brothers in law, John Byers who lived about the same distance from him, and Thomas Smith whose house was thirty-five miles distant. The widow after her husband's death, removed with her children to her brother Byers's; after some time, Patrick the eldest son, and Mary went to the house of their uncle Smith, where they continued two or three years, and the two other children remained with their uncle Byers eleven or twelve years until they removed to Virginia.

The eldest, son acknowledged, that his father was indebted in one bond of 50l. at the time of his decease.

The interest of the intestate in the lands was sold by John Byers and Martha Campbell, (the widow,) at public vendue, for 140l. 10s. and they executed a bill of sale thereof to Robert Taylor, Josiah Candow and John Vanlear, and also an assignment of the original receipt for 10l. paid to the receiver general, both bearing date on the 11th of May 1758. The premises being afterwards vested in Taylor, were conveyed by his administrators, in pursuance of a sale directed by the Orphans' Court, to John Sterling, in consideration of 145l. 10s., on the 1st January 1761, who on the 14th April 1769, conveyed to Jacob Lime, in consideration of 502l., and the defendants entitled themselves thereto by divers mesne conveyances.

Byers and his sister were dead. No letters of administration to them were shown in evidence, but their bill of sale stiled them administrators; nor were any inventory or administration account shown to the court, or search made for them.

The counsel for the plaintiff admitted, that formerly equitable titles to land under improvements, and even warrants and surveys were considered as personal property, appraised as such in inventories, and settled in administration accounts, without any orders of Orphans' Court empowering the administrators to sell ; or in the case of wills, without any authority from the testator.   But they contended that this usage ceased in 1753 or 1754, and consequently, that the sale made by the administrators in 1758 was not protected thereby.

The counsel on both sides submitted the case to the charge of the court.

The court, after stating the titles of the contending parties, observed there was a very considerable interval, during which equitable titles to lands were not viewed in the same light as at present.   It was not then supposed that ejectments could be supported on the grounds of an improvement, warrant or survey, the legal title being in the proprietaries.   Amongst some of the first instances of a different practice in this court, may be reckoned the case* of the lessee of George Sprenkel et al. v. George Stevenson.

In more ancient times, such equitable claims in lands were ranked as mere chattels, and sold as such by executors without powers in the wills, and even by executors in their own wrong, and by administrators without the intervening orders of the Orphans' Courts.   Such sales formerly made *bona fide* for payment of debts, or maintenance of minor children, have frequently been sanctioned by courts of justice.   A determination on this very point was had at Lancaster, June assizes 1782, between the lessee of Robert Means et al. v. Joseph Flora senior and junior, by M‘ Kean, C. J., and in many other cases† before the war.

The titles to many valuable estates depend on the sales of this nature, and it would be highly inconvenient and dangerous now to impeach them.   12 Mod. 281.   The custom of the country of that day was *usitata* and *approbata*, and became the received

---

* Tried at Nisi Prius at York, May assizes 1772.   An improvement was defended against a patent, at Lancaster, November assized 1768, in Myer's lessee v. Hefferfinger.

† Burger's lessee v. Trealer, tried at Nisi Prius, at Easton, 176—·
Lessee of William Read v. Aaron and John Boggs, Lancaster, May assizes 1769·
Lessee of Matthias Eib v. Nicholas Marrot in the same county, May assizes 1770

law. Indeed the law itself has been said to be nothing but common usage. 2 Mod. 238.

But the plaintiff's counsel insist that this usage ceased in 1753 or 1754. We apprehend this not to be the fact. In the case of the lessee of Stephen Duncan v. Benjamin Walker,* the court expressed themselves thus: "Improvements made *animo residendi*, and even warranted and surveyed lands made thirty-five years ago or thereabouts, were generally considered as mere chattel interests, and appraised as such in the inventories of deceased persons : they were sold in the common course of administration by executors or administrators as personal property, and such sales when made fairly for the purpose of payment of debts, or bringing up minor children, (though even by executors *de son tort*,) have often received the sanction of courts of justice, before the revolution."

Byers and his sister may well be considered as executors in their own wrong, if they were not the rightful administrators. The defendants have not taken the trouble to search the offices at Lancaster.

Byers took the children, who are now claiming the land, to his own house, and kept two of them many years. It is in proof that there was one bond of 50*l.* unpaid. From our hearing nothing further of it, we may fairly presume it has been discharged by those who took on them the management of the estate after the deceased of David Campbell. In the nature of things, they must have been other debts besides funeral expenses to be satisfied. What funds were there, besides these lands and a stock of creatures, probably small, to accomplish all these necessary disbursements ? Executors or administrators paying debts to the full amount of the inventory, on a fair appraisement, acquire a property in the goods appraised. Cro. El. 120. 1 Leon. 111. Dy. Fol 2, 187. Godolph. 186. And where a trustee for the sale of lands for payment of debts, prays to the value of the lands, he thereby becomes a purchaser himself. 1 Cha. Ca. 199.

The tract was sold at public vendue for 140*l.* 10*s.* in 1758, and in 1761 was again sold for 145*l.* 10*s.*, so that we have proof it went to its full value when first sold. If these executors have not fully paid up the amount of the sums by them received, recourse must be had to them. But the contrary is to be presumed, as the children had another uncle living near them, who probably would not have suffered injustice to be done to them. The lands have since passed through many different hands, who have paid large sums of money therefor, and added to the value of the property by their several improvements.

* In Bank, January Term, 1793.

The undisturbed possession of the premises for thirty-eight years is a most powerful additional argument in favour of the present defendants.

Verdict for the defendants.

Messrs. Duncan and Bowie, *pro quer*.
Messrs. Ingersoll, Montgomery and Fisher, *pro def*.

---

## AT NISI PRIUS, AT SUNBURY, OCTOBER ASSIZES, 1796.

### CORAM, YEATES AND SMITH, JUSTICES.

